BABCOCK and others vs. THE NEW JERSEY STOCK YARD COMPANY and others.

1. The question, whether the charter of the New Jersey Stock Yard Company does not relieve it from the effect of a statute against carrying on offensive trades, is one which this court will not decide on an application for a preliminary injunction founded on that statute: 1. Because it is a doubtful question of law, or one at least in good faith disputed, and not adjudicated by the courts of law. 2. Because if the statute be in force against the company, it only makes a particular act unlawful, which will not be restrained merely because it is unlawful, if it occasion no irreparable injury.

2. The New Jersey Stock Yard Company's premises being a nuisance

Babcock *v.* New Jersey Stock Yard Company.

by reason of the stench arising from the great number of hogs kept there, and the length of time they were kept there, the company was restrained from keeping hogs on their premises, or at any place from which the stench could affect complainants' premises, for more than three hours; this time to be shortened, if it did not protect complainants from the nuisance.

3. The permitting of blood and offal of animals to run or be deposited on the shores, or in the waters of the bay, or on the premises, enjoined.

4. The defendants having shown by the evidence of scientific and practical experts, that the matters complained of as a nuisance could be remedied, and that they had adopted certain measures, and proposed to adopt others to remedy the evils, a commissioner was appointed to examine the premises and the proposed remedial measures, with power to examine witnesses, and report; neither party to offer any testimony; either party to have the right to move for action on the report on four days notice, and upon like notice to move for any specified modification of the injunction.

The argument was upon a rule to show cause why an injunction should not issue, and upon the answer of the defendants and depositions taken.

*Mr. Gilchrist, Attorney-General,* and *Mr. Dixon,* for the rule.

*Mr. Scudder* and *Mr. Winfield,* contra.

THE CHANCELLOR.

The preliminary question was raised whether the charter of the corporate defendants relieves them from the effect of the statute of April 6th, 1865, against carrying on of offensive trades in Hudson county, east of the Hackensack. This, although it was fully argued, and with great ability, by counsel on both sides, I will not determine here for two reasons: First, because it is a question of law which may be considered doubtful, or that is at least in good faith disputed, and has not been adjudicated by the courts of law of this state, and therefore this court must not grant the preliminary injunction founded upon that statute. Secondly, and chiefly, because if that statute was in force against the operations of this company, it would simply

render the manufacture of offal and animal remains unlaw-
ful; but this court could not enjoin it any more than it could
the selling of liquor by small measure without a license, or
any other unlawful act simply because unlawful, unless it
caused irreparable injury, for which there was no redress at
law. I have no hesitation in holding, and it was not dis-
puted by the counsel for the defendants, that this charter
does not empower the defendants to carry on the business
authorized, in a way that would be injurious to others, or
would materially affect their health, their comfort, or their
property. That question was decided upon granting the
limited injunction now in force.

The question now is, whether it sufficiently appears upon
examination of the evidence on both sides that the business
as now carried on by the defendants, so affects the health,
comfort, or property of the complainants, as to be a nuisance
which this court should restrain by an unconditional injunc-
tion.

It is only injuries to the complainants and their property,
that can be relieved in this suit. The proofs on the part of
the complainants clearly show, that the smell or stench aris-
ing from the droves of live hogs kept on the premises in
such numbers and for such length of time as has been done
here, is an unquestionable nuisance that should not be per-
mitted. This is not in any way contradicted, but it is con-
firmed by the proof on the part of the defendants. I shall
therefore enjoin the defendants from keeping any live hogs
on the premises, or at any place from which the stench can
affect the premises of the complainants or any of them, for
more than the space of three hours; reserving the right to
the complainants to apply for a modification of the time,
which is adopted merely on conjecture, if experience shall
show that this time is too long to protect them from the
nuisance. But in view of the quantity of animals on the road
to the abattoir, and to protect the defendants as far as practi-
cable from unnecessary loss, this injunction not to be in effect

until after the 15th instant. In the meantime, the injunction now in force will restrain them from keeping any hogs on the premises, longer than absolutely necessary.

I am also satisfied that permitting the blood of slaughtered animals, the contents of their stomachs and intestines, and other offal or parts of the animal to run, or to be deposited upon the shores or in waters of the bay, or to remain on the premises, causes a nuisance injurious to the complainants, and should be restrained. To allow time to perfect the arrangements necessary for avoiding this, the injunction will restrain it after the 10th instant. The defendants, Davis & Harrington, have not appeared or answered. The case shows that the business, as carried on by them on the part of the premises which they have leased and occupy, is an unquestionable nuisance, and should be restrained to the full extent prayed for in the bill, and an injunction must issue against them accordingly. I am satisfied that the manner in which some of the other operations of the defendants, such as boiling and the manufacturing the viscera and intestines, and the extracting the fat, as conducted by the corporate defendants, and the disposal of the products, and the condition in which the buildings and pens were kept before the commencement of this suit, were offensive and should be restrained.

But I believe, from the evidence of the scientific and practical experts and others examined, that it is practicable to remedy these matters, if not entirely, yet so as not to be an injury to either of the complainants, and some measures have been adopted and are proposed, which may so remedy them. I shall appoint some proper person a commissioner to examine the premises, and the measures adopted and proposed to be adopted to remedy these evils, and to report the result of his examination to me, at some short day, that such action may be taken as is necessary to protect the complainants; such commissioner to have power, if he deems it necessary, to examine any witnesses, or the evidence already taken, but the parties not to have the right to offer testi-

mony.   Either party shall have the right to move for action upon the report of such commissioner upon four days notice, and upon like notice to move for any specified modification of the injunction.